MARY B. PHELPS *v.* H. S. J. HARRIS ET AL.

ESTOPPEL. *Laches. Trustee and beneficiary. Case in judgment.*

V., as trustee, was a creditor of the estate of II. V., who had died testate, leaving a large personal estate and making a special devise of his real estate to J. The devisee was let into possession of the devised premises, and V., by consent of all concerned, took possession of the personal estate, which was amply sufficient to pay all debts of the estate. Instead of proceeding to sell property for the payment of his debt, as he had a right to do, V. undertook to discharge his debt by use of the personal estate placed in his hands. V. died, many years having elapsed, the personal estate having been lost and destroyed, and the real estate decreased greatly in value, the parties for whom V. was trustee in his lifetime filed a bill seeking to subject the real estate in the hands of the devisee to the payment of the debt. *Held,* that V., having failed to enforce the debt against the estate by sale of property when it was amply sufficient to pay it, but having adopted other means of payment, would be estopped to assert it now against the devisee, and as he could not assert, those whom he represented will not be allowed to do so.

APPEAL from the Chancery Court of Washington County.

R. B. CAMPBELL, Special Chancellor.

Hon. W. G. Phelps, Chancellor, being disqualified by interest, did not sit in the case.

In 1850, Mrs. Sarah Vick, joined in by her husband, Henry W. Vick, executed a deed of settlement conveying her property to Jonah Pierce upon certain trusts declared in the deed. She also made her husband co-trustee and agent for Jonah Pierce, armed with large discretionary powers as to the management of the property. Henry W. Vick was to have a liberal support out of the property during his life. The ultimate trust was for such children as Mrs. Sarah Vick might leave surviving her at her death. Soon after the execution of the deed she died, leaving surviving her four children, namely, Harry G., Mary B. Vick, and two others. Harry G. Vick became of age in 1858, and thereupon a partition of the trust property was made by Henry W. Vick setting off to Harry his portion of the land, negroes, and other personal property, of which he took possession. Harry Vick died in 1859, having first made a will by which he made a special

45

devise to Miss Helen Johnson, who is now Mrs. Harris, of his plantation derived from the trust estate by the partition. He gave pecuniary legacies of ten thousand dollars each to Mr. and Mrs. Pindell, of Louisville, Ky. The remainder of his estate of every kind he devised and bequeathed to his father, Henry W. Vick, for life, and at his death to his sister and brother, Mary B. and George Vick. Pindell was appointed executor, and proved the will and qualified as such. On the 8th day of March, 1859, at a sale by a commissioner, under a decree of the chancery court, appointed at the instance of the administrator of one Marr, deceased, Harry G. Vick purchased nine hundred and sixty acres of land adjoining his plantation (which he got by the partition) on a credit of twelve months, and executed therefor his obligation for fourteen thousand four hundred and seven dollars, payable to the administrator of Marr twelve months after date, with six per cent. interest from date, with Henry W. Vick, trustee, as surety. A few days after the maturity of this obligation, Harry G. Vick having died, the sum due by it was paid by Pindell, executor of Harry G. Vick, contributing five thousand dollars, and the remainder being advanced by Henry W. Vick, the surety. Pindell continued to cultivate the plantation of his testator, with the personal property thereon, until the close of 1860, when he delivered the plantation to Miss Helen Johnson, to whom it had been devised, and transferred the slaves and mules and other property suitable to the cultivation of the plantation to possession of Henry W. Vick, under a contract by which Henry W. Vick was to work the slaves, mules, and other like property held by him as trustee on "Nitta Yuma" plantation, and pay to Pindell one-third of the products of said plantation thus cultivated. This arrangement practically closed the administration of Harry G. Vick's estate by Pindell. In April, 1861, Henry W. Vick died. Very soon afterward, Jonah Pierce, surviving trustee in the deed of settlement mentioned above, came to Mississippi and took possession of "Nitta Yuma" plantation and all that was on it, and qualified in the Probate Court of Washington County as guardian of Mary B. and George Vick. He continued in pos-

session of the property as trustee and guardian, controlling and managing it until the fall of 1865, when he presented in the Probate Court of Washington County his final account as trustee and as guardian. Early in 1866 he was duly discharged, having previously surrendered to Mary B. Vick, who had become Mrs. Phelps, " Nitta Yuma " plantation and all the remaining personal property. Pindell presented his final account in 1866 and was subsequently discharged, and his account approved by the express consent of Mrs. Phelps and her husband, indorsed in writing on the account.

Mary B. Vick became of age in 1863, and married Phelps in 1865, when the statutes of limitations were suspended. In 1880 Hunt was appointed admr. d. b. n., c. t. a., of Henry G. Vick, and Mrs. Phelps probated a claim against the estate for ten thousand two hundred and seventy-three dollars, the amount of the sum paid by Henry W. Vick, trustee, as surety of Henry G. Vick, on the obligation for the purchase-money of the Marr land above mentioned, and presented her bill against the administrator aforesaid and the appellee, as devisee of Vickland, alleging insufficiency of the personal estate (destroyed by the war) to pay debts, and prayed a sale of the land left by the testator to pay debts.

Various defenses were interposed by Mrs. Harris, but the court based its decision on a single ground as shown by the opinion, and the facts stated are all that is required for understanding the view taken by the court.

*Percy & Yerger*, for appellant.

1. This claim is not *res adjudicata*, because,

(1.) The chancery court had no jurisdiction to give the relief sought in the bill. The court below dismissed the bill and the supreme court on appeal affirmed the dismissal, solely on the ground that the chancery court had no jurisdiction of the case made by the bill. See report of the case, *Phelps* v. *Harris*, 51 Miss. 789.

(2.) The object of that suit was to have declared void the devise to Helen S. Johnson, now Harris; or if it should be held that in equity it was a good devise to the extent of entitling her

to a share of Henry G. Vick's equitable estate to the value of the land devised, then and in that contingency an account should be taken of the various sums advanced out of said trust estate to each of the *cestuis que trust*, or in their behalf, and that the debt now sued on should in such accounting be held, with other advances made him, as a part of the trust estate received by H. G. Vick.

(3.) In that suit it was not sought to enforce this claim against the estate of Henry G. Vick. It was alleged in that suit that Henry W. Vick, the trustee, had, among other advances, advanced out of what the complainant in that suit claimed to be joint trust funds the debt here sued on to Henry G. Vick's estate. Had it been sought to enforce this as a claim against the estate of H. G. Vick, the court would clearly have had no jurisdiction, because the act authorizing a creditor to proceed directly against an estate was passed long after that suit. Acts 1876, p. 187, § 25.

(4.) As a chancery proceeding to enforce a lien the court would have been without jurisdiction, because there was no lien. The bond was given for purchase of land sold under chancery decree, under Code 1857, p. 362, art. 2d. It would have become a judgment upon non-payment. No lien is given. The surety paid it, and by so doing he or appellant, with whose funds it was paid, become only a general creditor of the estate.

2. It is insisted that because Pierce, the guardian of appellant, came into possession of a large amount of the personalty of H. G. Vick's estate, which was primarily liable for its debts, therefore this debt was paid, or, what amounts to the same thing, the appellant is estopped from enforcing it as proposed. That the mere devise to appellant was neither an ademption or payment is manifestly true for several reasons. The debt was not due to her, when the devise was made or when it took effect. The devise was of a residuum. It was dependent upon a life estate in H. W. Vick. Story's Eq. Jur., §§ 1119, 1123; 1 Roper on Legacies 879; 43 Miss. 641. To have the effect of paying appellant's claim, property primarily liable for it must have come to her hands or some one authorized to receive it for her as her property and vesting title in her, and not contingently. A careful examination of this record

will show that neither she nor her guardian ever had any such possession, and that in point of fact they never had any title to any part of the property. Appellant's portion in the estate had not been and could not be ascertained, because it was a residuum and dependent upon payment of debts and legacies. After the war the debts were paid, the residuary estate was *nil.* Appellant's just claim came to her knowledge in 1870. In *Calhoun* v. *Rail,* 26 Miss. 418, property was distributed by order of the court and possession taken, but before confirmation it perished; the court held that no title passed, no risk was imposed, and ordered a partition. Much more should the rights of infants be protected. 23 Miss. 161.

3. Are there here any of the elements of estoppel? Undoubtedly not.

(1.) Appellant was wholly ignorant, and without fault of hers, of the existence of this claim, and did not know of it until several years after both guardian and executor had been discharged.

(2.) Neither the guardian nor executor was released from any liability for which they could have been held to account. The administration of both was without fault.

(3.) Had appellant knowingly given to the executor an absolute release, it would have in no way impaired defendant's rights against him.

(4.) But no release was given, either knowingly or otherwise. She merely consented to his account being allowed, and in order to save expense asked that no publication be made against herself.

4. Finally, there was some pretense in the argument below as to a merger of the debt, because of an alleged possession of part of the lands purchased at the chancery sale. But this proposition is not tenable.

(1.) Complainants never had possession as a matter of fact. The executor retained possession and paid the taxes until, because of having become worthless, it was abandoned by him to the State.

(2.) This land was a part of the estate subject to be called on for the debts, and if appellant can be said to have had constructive possession, it was contingent upon this demand, and her interest might not, and in fact would not, have amounted to anything.

(3.) There was no extinguishment of a lien by merger, because, as heretofore shown, there was no lien, and no title could produce such result except an absolute title in fee without contingency.

We insist that we are entitled to have an account taken of the amount due us; we admit that an account must be taken also of all that we have received as residuary devisee, and if there should then appear to be a balance due us we are entitled to an order of sale of all the lands belonging to or which did belong to the estate of H. G. Vick, subjecting those lands in the possession of defendants to sale only when it becomes necessary, after exhausting all other assets.

*Frank Johnston,* on the same side.

Mrs. Phelps has a certain and complete equity, to be treated by equitable subrogation as a *creditor* of the estate of Henry G. Vick, and as such entitled to enforce her claim, through any specific lien or remedies that belonged to the note; or if it was a general claim, then through the statutory charge on the estate. It remains to inquire whether this equity of Mrs. Phelps, founded both on natural principles of justice as well as technical authority, has been lost to her or extinguished.

1. The statute of limitations does not operate against her claim. The judgment pronounced and the opinion rendered by this honorable court on the former appeal is the law of the case on this question. *Smith* v. *Elden,* 14 S. & M. 100. This also disposes of the objection of staleness.

2. She is not estopped from the assertion of her claim because she was given a residuary bequest by the will of Henry G. Vick. The residuary devise or legacy cannot operate as an ademption of the debt. There are so many reasons and correct and well settled rules of law that prevent such a result that it is difficult to enumerate them all, even conceding that the debt was due to Mrs. Phelps at the time of making the will, or at the death of the testator, *which was not the case.* The devise and legacy were not the same in amount as the debt; this alone prevents an ademption. 2 Story Eq. Juris., § 1120. So, where the times of payment are different. 2 Story Eq. Juris., § 1121 and note 1; *Van Riper* v.

*Van Riper*, 1 Green's Ch. 1 ; *Gilliam* v. *Brown*, 43 Miss. 641.  And there is no ademption where the bequest is of a residue.  2 Story Eq. Juris., § 1122 ; *Barrett* v. *Beckford*, 1 Ves. 519 ; *Devise* v. *Poulet*, 1 Cox 188.  Nor where the debt is contracted subsequently to the will (as is the case here).  2 Story Eq. Juris., § 1122 ; *Dey* v. *Williams*, 2 Dev. & Batt. Eq. 66.

3. Mrs. Phelps is not estopped by her reception of the personal property of the estate of Henry G. Vick.  She never claimed or took possession of any of the slaves or personal property of that estate, and the loss of this property cannot be charged to her.  The title to all this property went to the executors for the trust of paying the debts of the testator and the legacies.  3 Redfield on Wills, 126 and 127.  And, moreover, Mrs. Phelps could not have compelled the executor to deliver the property to her by any legal proceeding until the debts and legacies had been paid.

4. The suggestion in the answer that Mrs. Phelps' rights as creditor have been lost by merger is not entitled to serious criticism.  Merger is never permitted where it would destroy a substantial right.  Besides, the suggestion contains palpably an erroneous application of the principle.  Under devises and bequests the question is not one of *merger*, but one of testamentary intent, being whether the testator designed to extinguish a debt by a bequest or legacy.

5. The objection that her claim (as creditor) is lost because she might have subjected the personal property to her claim is wholly untenable.  This assumes the incorrect legal premise that upon creditors will fall the loss or destruction of the personal assets of a decedent's estate, and thus work the exoneration of the land, a doctrine repudiated in *Evans* v. *Fisher*, 40 Miss. 603.

6. The proceeding on the final account and discharge of Pindell did not involve the claim made in the present bill.  Distributees alone are proper parties to a final account.  *Roberts* v. *George*, 34 Miss. 322 ; *Wren* v. *Gayden*, 1 How. Miss. 265.  Creditors are not parties where the estate is solvent, and are not bound by the decree. *Pollock* v. *Bine*, 43 Miss. 140.  That a former suit or proceeding may become effective as a bar or conclusive in evidence the issue must have been the same.  *Laud* v. *Kiern*, 52 Miss. 301.

7. The decision in the former equity proceeding was an adjudication that the court had no jurisdiction. The equity now claimed could not be considered in that case, and the court expressly so decided. *Phelps* v. *Harris*, 51 Miss. 789.

*Nugent & McWillie*, for the appellees.

1. The case is one purely between devisees claiming under a will. Certainly, if the executor were alive and acting and seeking to sell the land, it would be a complete defense to show that he had in his possession sixty-nine thousand dollars' worth of property primarily liable to pay debts, and which could have been sold by him for that purpose, especially in view of the will under which our client claims. The case in this point of view would fall clearly within the principles announced in *Turner* v. *Ellis*, 24 Miss. 173 ; *Payne* v. *Pendleton*, 32 Miss. 320 ; *Hanna's Appeal*, 31 Penn. St. 53 ; *Carter* v. *Barnadiston*, 1 P. Wms. 518 ; *Omerod* v. *Hawman*, 5 Ves. Jr. 734 ; 1 Salkeld 153 ; 49 N. H. 245 ; 11 Allen 140 ; 14 Mass. 83 ; 3 Gray 205 ; 106 Mass. 100.

2. Complainant took the land charged with a lien and paid the lien. As the case was then, this course was prudent and wise ; the land was worth more than the money to appellant. She had the legal title, and if by paying the lien she acquired the equitable title there was necessarily a merger. There was no reason for keeping alive the encumbrance ; the personalty was ample for the payment of debts, and the complainant's trustee went into possession of the land at once. We do not hear again of the matter during the whole administration of the estate. The executor placed Miss Johnson in possession of the plantation devised to her with the knowledge and assent of Vick, trustee ; she has occupied that property ever since. It has been enhanced in value since. To allow a merger of estate to be prevented now and the lien to be kept alive would aid in carrying a wrong into effect under color of legal forms. Equity only interposes to prevent a merger in order thereby to work substantial justice. 2 Pomeroy Eq. Jur., § 794 ; Ib., §§ 790, 791, 792, 793 ; Ib., § 797.

3. The complainant ought not now to be heard to complain of the adjustment, because the same was just and fair at the time it

was made. The arrangement made by the executor with Vick, trustee, was a good one; the estate in his hands owed certain debts and money legacies; the personalty was worth some seventy thousand dollars; the land was worth the purchase-money due upon it; it was proper to save the property for the residuary legatees and devisees; the conduct of the trustee accorded with what was the custom of the country, and would have been authorized by the chancery court. The probate court approved the adjustment. Had the trustee, at the time he made payment of the note, stated the facts and asked authority to act, there can be no question as to what would have been done by the chancery court. The authority would have been granted promptly. Can it make any difference as between the parties to the suit that action was taken without soliciting the *power* in advance to act? The act was wise; it was, under the surrounding circumstances, one that the best interests of the children necessitated, and the court now will not disturb the appellee because of the failure of the executor and trustee to proceed legally and circumspectly. The appellant, knowing all the facts, consented to the final account of Pindell, executor, now dead, and to his discharge, and accepted from her guardian what was left of Vick's personalty.

4. The appellant ought not now to be allowed to vex us with this suit. She had all the facts before her when she first brought suit, and should have put her case before the court in all its aspects. It would be impossible to do equity if the appellee were to be compelled to lose her property or pay the amount claimed by the appellant. Certainly, her expenditures in improving and bettering the land should be considered. The equity of the case was reached when the complainant's bill was dismissed. Great wrong would now result if the settlements finally made twenty years ago are reopened.

5. The claim is a stale demand and barred by limitation. The bill undertook to avoid this conclusion, but the answer negatives the bill; and as the appellant did not swear to the bill and the appellee did swear to the answer, and there is nothing to countervail the answer, the case as to the statute of limitations would seem to

be made out, unless the coverture of the appellant would save her bar. She does not rely upon that in her bill, and there is nothing else which could be of avail to her.

6. The answer does not concede but denies that the appellant's money was employed to pay the note to Marr's administrator. The bill is not sworn to by appellant; the answer is sworn to by appellee. The proof fails to establish the main idea at the foundation of this litigation. If Mrs. Phelps' money did not pay the debt, she has no pretense of right in this cause. She is a pure volunteer. Certainly, after so long a time and so many fair settlements and receipts and discharges of trustees, the appellant ought to be required to make a very strong showing for relief. The answer denies all the equities of the bill and they are not proven, we think, to the satisfaction of the court.

7. The subject of merger upon which we rely is not difficult of solution in this case. In the union of equitable and legal estates in the same person the former is merged and extinguished. *Gardner* v. *Astor*, 8 Am. Dec. 466 ; 5 Am. Dec. 229 *et seq.*, and Jones on Mortgages, ch. 20 ; Ib., §§ 848, 855, 863. There is nothing of subrogation in this case ; the note given for the Marr land was not only a lien on that land, but a charge upon all the property left by Vick. The appellee, in 1860, could have compelled the executor to put her in possession of the Vickland plantation, because of the large surplus of personalty above the debts and legacies. The executor was aware of the fact, and after gathering the crop of 1860 delivered up the plantation to Miss Johnson. It is now too late to reverse this conduct. The effort of the trustee and executor to save the slaves and other lands of the testator for the residuary legatees and devisees should not be visited upon the appellee at this juncture. She had the right to rely upon the delivery of the plantation to her as a settlement, and was under no legal or equitable duty to do anything further. Then rather ought appellant to have proceeded against her own trustee and executor than to have settled with them and acquitted them, and this settlement ought to be concluded.

CAMPBELL, C. J., delivered the opinion of the court.

We adopt the theory of the appellant and accept as true that H. W. Vick, as trustee, was surety on the obligation to Rucks, administrator of Marr, and that he used trust funds to pay it, and that he thereby became a creditor of the estate of H. G. Vick, deceased, for the amount he paid. There is much probability in the suggestion of the appellee that H. W. Vick did not consider himself a creditor of H. G. Vick's estate or intend to occupy that attitude, and that he regarded the debt as extinguished. It is useless to mention the circumstances which support this view, since we adopt the appellant's theory of the transaction and reach our conclusion from her standpoint. The transaction mentioned was had in November, 1859. The slaves and other personal property of H. G. Vick's estate were employed by Pindell, executor of his will, during the year 1860, on the plantation devised to the appellee, and at the close of that year this plantation was surrendered to the appellee, and the slaves and other personal property of the testator were delivered to H. W. Vick, who had a life estate in it and who was trustee of a large amount of other property for the appellant and her brother, who has since died, under a contract with the executor to pay to him one-third of the products of all the property on Nitta Yuma plantation cultivated by H. W. Vick, trustee. About three thousand dollars' worth of the personal property of H. G. Vick, deceased, was delivered to H. W. Vick as residuary legatee, who receipted the executor for it some time before the contract of hiring mentioned, which was for the year 1861. The value of the personal property delivered to H. W. Vick was nearly seventy thousand dollars. The debts of H. G. Vick were trifling in amount compared with this estate. The pecuniary legacies were for ten thousand dollars each to Pindell and his wife, and Pindell, who was executor and legatee, put the slaves and other personalty in possession of H. W. Vick, upon his agreement to deliver to Pindell one-third of the products of the Nitta Yuma plantation, which was looked to as the means of paying any remaining debts of the estate and the pecuniary legacies of Pindell and wife. This was practically a closing of his admin-

istration of the estate of H. G. Vick by Pindell, as executor. H. W. Vick being trustee of a large amount of other property for his children, Mary B. and George C., and having a life estate in all the property of H. G. Vick not specifically devised, accepted the property, agreeing to account to Pindell, executor, for one-third of the products of Nitta Yuma plantation, on which were worked the property held in trust by him as well as the personal property received from H. G. Vick's estate. He preferred this arrangement to selling personal property or land to pay debts. The personal property was ample to pay debts and legacies, and besides this there was land of H. G. Vick to the value of many thousands of dollars, not including the special devise to the appellee. Instead of proceeding to sell personalty or land, if that was preferable, to pay debts, H. W. Vick, who was creditor, assented to the arrangement, by which he became the holder of the large estate to which he might have resorted to obtain payment of his demand on terms satisfactory to him. Whether he held the claim individually or as trustee is not material, since the deed of settlement which constituted him trustee and agent invested him with discretionary power as such in the management of the property committed to his charge. He forbore to urge his demand and preferred the arrangement mentioned, which suited all concerned. The appellee was let into possession of her devise and saw the ample personalty of the estate parceled out as suited those interested in it. It was not for her to complain, as those interested were satisfied, and she had got the provision made by the testator for her. If H. W. Vick had lived he would not have been allowed, after the destruction of the personal property and the depreciation of the land of the estate of H. G. Vick, to demand a sale of the land devised to appellee. He would have been concluded by his own action, and estopped from resorting to the special devise by his *laches* as a creditor, in not securing payment, and instead thereof bargaining for the property on terms acceptable to him and the executor. On the death of H. W. Vick all his rights were vested in the appellant and her brother, who has since died, and now she is the sole heir and distributee of H. W. Vick, but she took the claim which is sought to be enforced

in this suit just as it was held by him, and as he could not enforce it she cannot. The insufficiency of the estate to pay debts is traceable directly to the act of the creditor himself, and he would not be allowed now to have payment out of the devise to the appellee. The settled law of the State is that if the personal estate is insufficient at the time of the application to sell land to pay debts, it may be resorted to after exhaustion of legal remedies against the executor or administrator and sureties if he is in fault (or by statute upon proof of insolvency or non-residence. Code of 1880, § 2041), but it has never been held that a creditor, who, instead of enforcing his legal right, has made an arrangement with respect to the property of the estate to which he had the right to resort for payment, and relied on that for payment instead of enforcing his legal remedy, could, when his own arrangement failed, afterward fall back on his original legal right. It would be inequitable in this case to permit it, and we will not.

*Decree affirmed.*